Henry C. Wang (SBN 196537)
Email: hwang@reedsmith.com
William R. Overend (SBN 180209)
Email: woverend@reedsmith.com
Michael A. Garabed (SBN 223511)
Email: mgarabed@reedsmith.com
Karen Wan (SBN 248542)
Email: kwan@reedsmith.com
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA 90071-1514
Telephone: +1 213 457 8000
Facsimile: +1 213 457 8080

*Attorneys for Plaintiff*
PINKBERRY, INC.

FILED
2008 SEP 10 PM 3:07
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

PINKBERRY, INC., a California corporation,

Plaintiff,

vs.

PINGO FOODS CORPORATION, d/b/a. PINGO YOGURT, a California corporation,

Defendant.

Case No. CV08-05926 R (RZx)

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:**

**1. FEDERAL TRADE DRESS INFRINGEMENT**

**2. FEDERAL TRADEMARK INFRINGEMENT;**

**3. FEDERAL UNFAIR COMPETITION;**

**4. FEDERAL FALSE DESIGNATION OF ORIGIN;**

**5. STATE UNFAIR COMPETITION;**

**6. STATE INJURY TO BUSINESS REPUTATION; AND**

**7. UNJUST ENRICHMENT**



REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Plaintiff Pinkberry, Inc. ("Pinkberry") for its Complaint against Defendant Pingo Foods Corporation d/b/a Pingo Yogurt ("Pingo Foods"), alleges as follows:

## JURISDICTION AND VENUE

1. This is a complaint for injunctive relief and damages based on trademark infringement, trade dress infringement, unfair competition, and false designation of origin under 15 U.S.C. Section 1051 *et seq*., as amended (hereinafter "Lanham Act"), as well as related state law claims.

2. This Court has subject matter jurisdiction over this action under the Lanham Act, 15 U.S.C. § 1121; 28 U.S.C. § 1338(a) (any act of Congress relating to patents, copyrights and trademarks); and the doctrines of ancillary and pendant jurisdiction.

3. This Court has personal jurisdiction over Pingo Foods because it maintains its place of business and conducts business in the State of California.

4. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) and (3) because a substantial part of the events giving rise to the claims occurred in this district, a substantial part of the property that is the subject of the action is situated in this district, and Pingo Foods was and is subject to personal jurisdiction in this district at the time the action was commenced.

## PARTIES

5. Pinkberry is, and at all times relevant hereto has been, a corporation organized and existing under the laws of the State of California, having a place of business at 6310 San Vicente Boulevard, Suite 100, Los Angeles, California 90048. Pinkberry's primary line of business is the sale of frozen yogurt with optional toppings that include, among other things, fresh fruit, cereals and nuts, as well as smoothies (the "Pinkberry Products") under the distinctive Pinkberry branding in a unique café-style restaurant setting. Pinkberry operates stores throughout Los

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Angeles and elsewhere within this district as well as in interstate commerce.

6. On information and belief, Pingo Foods is, and at all times relevant hereto has been, a California corporation, having a place of business at 35 West Valley Boulevard, Alhambra, California 91801. Pingo Foods' primary line of business is the sale of frozen yogurt with optional toppings that include, among other things, fresh fruit, cereals and nuts, as well as smoothies, in a café-style restaurant setting which deliberately imitates Pinkberry's highly distinctive branding and trade dress.

## SUMMARY OVERVIEW OF COMPLAINT

7. Much the way that Apple Computers revolutionized the computer industry, raising the design standards and operating systems of the previously staid "beige box" computer market, Pinkberry has revolutionized the yogurt business by offering a product selection and consumer experience that are uniquely Pinkberry. Since its opening, Pinkberry has been featured in numerous national publications such as Time, Fortune, Los Angeles Times, New York Times, and Reuters, and has been the subject of countless internet blogs. *See*, true and correct copies of a sampling of articles discussing Pinkberry attached hereto as **Exhibit "A"** and incorporated by reference. These national publications have recognized the unique and highly distinctive look and feel of Pinkberry stores, noting, for example, that Pinkberry was responsible for "help[ing to] revive the sagging frozen yogurt industry"[1] and "develop[ing] a look that helped create a cult factor."[2] Among many of its other acclaims and accolades, *The Los Angeles Times* has called Pinkberry "a phenomenon, creating four-times-a-week addicts and spawning celebrity devotion, along with a

1 Hwang & Lee, *Simple by Design*, TIME MAGAZINE, March 12, 2008.

2 Boyle, *Starbucks Founder Bites Into Pinkberry*, FORTUNE, October 16, 2007.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

chorus of imitators..."[3] More recently, *The Los Angeles Times* opinion section made the tongue-in-cheek suggestion that the Los Angeles Coliseum should be renamed "Pinkberry Coliseum."[4] Indeed, Pinkberry's popularity, success, and fame in the yogurt business are unparalleled. Pinkberry was even showcased in an American Express national television advertisement. *See* true and correct copies of the American Express television advertisement stills, attached hereto as **Exhibit "B"** and incorporated by reference.

8. Pinkberry's success has been noted by its competitors and would-be competitors, including Pingo Foods. On information and belief, Pingo Foods' branding is a deliberate imitation of the Pinkberry branding and was implemented to build market share and a customer base by exploiting Pinkberry's renowned trade name, trademarks and trade dress and wrongfully trading upon Pinkberry's reputation and goodwill.

9. Pingo Foods has sought to profit from Pinkberry's success by using its highly similar PINGO YOGURT trademark (the "PINGO YOGURT Mark") to market and sell products that are identical or nearly identical to the Pinkberry Products, thereby infringing upon Pinkberry's registered trademarks, service marks, and trade name (collectively, the "PINKBERRY Marks"). Not only does Pingo Foods use a confusingly similar trademark to sell goods that directly compete with Pinkberry's goods, but it has also misappropriated Pinkberry's highly distinctive and non-functional trade dress.

10. Pingo Foods' wrongful acts create a likelihood of confusion in the minds of consumers as to the sponsorship, endorsement, association, or approval of Pingo Foods' products by Pinkberry. Accordingly, Pinkberry has been and continues to be damaged by Pingo Foods' infringing activities, thereby necessitating this lawsuit.

---

3 Menn, *Welcome Jolt for Pinkberry*, LOS ANGELES TIMES, October 16, 2007

4 Zirin, *The Pinkberry Coliseum*, LOS ANGELES TIMES, June 29, 2008



REED SMITH LLP
A limited liability partnership formed in the State of Delaware

## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

**A. Pinkberry's Creation And First Use Of Its PINKBERRY Trademarks, Service Marks, Trade Name And Trade Dress**

11. Commencing in or about January of 2005, Pinkberry created, developed and began marketing and selling the Pinkberry Products through its distinctive Pinkberry restaurants.

12. Since approximately January of 2005, Pinkberry has been using and is currently using its PINKBERRY Marks in connection with the marketing and sale of its Pinkberry Products, restaurants and related products and services. Pinkberry owns all rights in and to the federal registrations for the following PINKBERRY Marks, each of which is valid and subsisting:

| TRADEMARK | REG. NO. | ISSUE DATE | GOODS AND SERVICES |
|---|---|---|---|
| PINKBERRY | 3,302,143 | October 2, 2007 | Frozen yogurt; frozen yogurt based dessert, combined with fruit, nuts, cereal and shaved ice and rice cakes; and smoothies |
| PINKBERRY | 3,460,697 | July 8, 2008 | Restaurant services; restaurants; take-out restaurant services, café-restaurants; fast-food restaurants |
| Stylized Leaf and Berry Swirl Design | 3,461,027 | July 8, 2008 | Express restaurant services, food kiosk services, and carry-out restaurant services featuring frozen yogurt-based desserts, frozen dairy desserts, smoothies and shaved ice |
| PINKBERRY & Stylized Leaf and Berry Swirl Design | 3,460,702 | July 8, 2008 | Restaurant services; restaurants; take-out restaurant services; café-restaurants; fast-food restaurants |

*See* true and correct copies of those registrations attached hereto as **Exhibits "C"** through **"F"** and incorporated by reference.



REED SMITH LLP
A limited liability partnership formed in the State of Delaware

13. Since Pinkberry opened its first restaurant in the United States in or about January of 2005, its Pinkberry Products, restaurants and services have prominently featured the PINKBERRY Marks to identify them and to identify Pinkberry as their source.

14. In addition, the Pinkberry restaurants have been characterized by a unique and inherently distinctive trade dress which has been used to identify them and to identify Pinkberry as their source. The Pinkberry storefront, décor, layout, and style are unique and distinctive. The signage is green with pink accents, with metal blue and green awnings on the storefront. The restaurants' interior presents a contemporary and refreshing café-style environment that is painted in pastel colors, such as peach, green and blue, with green circles on the glass and counter. The minimalist décor showcases unique and distinctive non-functional design elements that include, among other things, glass walls, pebble stone flooring and modern designer furniture, such as white tables, modern colored plastic chairs, slatted natural wooden benches and modern hanging lamps (e.g., Le Klint pendant lights). Reflecting Pinkberry's modern style, the counter layout includes a minimalist food preparation area that is behind open, glass-plated countertops with uniform trays of toppings. These unique design features and characteristics, taken as a whole, create an inherently distinctive and non-functional trade dress (the "PINKBERRY Trade Dress") which readily identifies Pinkberry and its products. *See* true and correct copies of photos depicting examples of the PINKBERRY Trade Dress (including Pinkberry's "store concept" Internet webpage promoting its unique PINKBERRY Trade Dress) attached hereto as **Exhibit "G"** and incorporated by reference.

15. Pinkberry has expended substantial time, money, and effort in promoting its Pinkberry Products, restaurants and related products and services through the use of its PINKBERRY Marks and Trade Dress and in enforcing its rights in its PINKBERRY Marks and Trade Dress throughout the United States.

16. By virtue of Pinkberry's investments, the PINKBERRY Marks and Trade



REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Dress have become associated in the minds of consumers and in the minds of the general public with Pinkberry and have become assets of substantial value to Pinkberry and symbols of its quality products and valuable goodwill. As a result of its efforts and success, in less than three (3) years, Pinkberry has expanded from one location in West Hollywood, California to over 60 locations in the United States, with current plans to continue to expand nationally and to enter international markets.

17. Since January 2005, the Pinkberry Products, restaurants and services, as identified by the PINKBERRY Marks and Trade Dress, have been widely used and recognized in the United States. *See e.g.* Hwang & Lee, *Simple by Design*, TIME MAGAZINE, March 12, 2008 (describing Pinkberry's successes) and other articles attached hereto as **Exhibit "A"** and incorporated by reference.

**B. Pingo Foods' Unlawful Conduct**

18. On information and belief, since in or about March 2007, Pingo Foods has operated a café-style restaurant in which it sells the same products as the Pinkberry Products under the confusingly similar PINGO YOGURT Mark and a colorable imitation of the distinctive PINKBERRY Trade Dress. Among other things, Pingo Foods has misappropriated unique and non-functional design elements of the PINKBERRY Trade Dress such as pastel colors of peach, green and blue, green circles on glass walls, glass walls, pebble floors, modern designer furniture (including white tables, modern colored plastic chairs, and modern hanging lamps) and a food preparation area that is behind open, glass-plated countertops with uniform trays of toppings. *See* true and correct copies of photographs of Pingo Foods' imitation of the PINKBERRY Mark and Trade Dress, attached hereto as **Exhibit "H"** and incorporated by reference.

19. Pingo Foods' use of its PINGO YOGURT Mark and Trade Dress in the promotion, advertising and sale of directly competitive frozen yogurt products and services constitutes the use in commerce of colorable imitations, copies and



REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

reproductions of the PINKBERRY Marks and Trade Dress, is deceptively and confusingly similar to Pinkberry's use of the PINKBERRY Marks and Trade Dress for identical products and is likely to cause confusion, mistake, or deception in the minds of the public.

20. Despite written demands by Pinkberry, Pingo Foods has used and is continuing to use and infringe the PINKBERRY Marks and Trade Dress.

21. Pinkberry has not consented to, sponsored, endorsed, or approved Pingo Foods' use of the PINKBERRY Marks or Trade Dress in connection with any of Pingo Foods' products or services.

22. Pingo Foods' acts of improper use and promotion of the PINKBERRY Marks and Trade Dress are likely to cause confusion or mistake in the minds of consumers as to the sponsorship, endorsement, association, or approval of Pingo Foods' products and services by Pinkberry. Likelihood of confusion is and will only be exacerbated by the fact that Pingo Foods' products and services are directly competitive with and/or highly related to Pinkberry's products and services. Pingo Foods' and Pinkberry's products are likely to be purchased by the same types of consumers, advertised and promoted in the same and/or similar advertising channels, and marketed and sold in similar retail establishments.

23. On information and belief, the foregoing actions of Pingo Foods have been knowing, deliberate, willful, and in utter disregard of Pinkberry's rights.

24. Pingo Foods' unlawful activity results in irreparable harm and injury to Pinkberry. Among other harms, it deprives Pinkberry of its absolute right to determine the manner in which its image is presented to the general public through its products and services; deceives the public as to the origin and sponsorship of such products and services; wrongfully trades upon, and cashes in on, Pinkberry's reputation and exclusive rights in its trademarks; and irreparably harms and injures Pinkberry's business reputation. As a direct and proximate result of Pingo Foods' conduct set forth above, Pinkberry has been injured and damaged in an amount to be

proven.

25. Pingo Foods' conduct is continuing, and will continue, unless enjoined by the Court.

26. Unless Pingo Foods is enjoined from engaging in the infringing conduct described above, Pinkberry will suffer irreparable injury and further damage. Thus, it would be difficult to ascertain the amount of compensation which could afford Pinkberry adequate relief for the acts of Pingo Foods present and threatened, and Pinkberry's remedy at law is not adequate to compensate for said harm and damage.

**FIRST CLAIM FOR RELIEF**

**TRADE DRESS INFRINGEMENT**

**UNDER 15 U.S.C. 1125(a)(1)(A) [LANHAM ACT § 43]**

27. Pinkberry refers to paragraphs 1 through 26, above, and incorporates the allegations thereof as if herein set forth in their entirety.

28. Pinkberry has continuously used and is still using its PINKBERRY Trade Dress in conjunction with its products, services and restaurants. Pinkberry uses its non-functional, distinctive and unique PINKBERRY Trade Dress to identify and distinguish its products, services and restaurants from the products, services and restaurants of others.

29. Pinkberry has invested substantial resources, time and effort in advertising and promoting its products, services and restaurants using the PINKBERRY Trade Dress in interstate commerce. Pinkberry's products, services and restaurants have been and continue to be sold under and in connection with the PINKBERRY Trade Dress. By virtue of such efforts by Pinkberry and Pinkberry's continuous use of the PINKBERRY Trade Dress, the PINKBERRY Trade Dress has become associated in the minds of consumers and the public with Pinkberry. Pinkberry has built up valuable goodwill in the PINKBERRY Trade Dress.

30. The PINKBERRY Trade Dress is a source of identity associated with

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Pinkberry and is entitled to broad protection.

31. Although Pingo Foods is not affiliated in any way with Pinkberry, Pingo Foods has infringed and continues to infringe upon Pinkberry's rights by marketing, advertising, and distributing its products, services and restaurants using a trade dress which is identical to and/or confusingly similar to the PINKBERRY Trade Dress in connection with Pingo Foods' sales, advertising, marketing and restaurant service activities. The goods and services of Pinkberry and Pingo Foods are distributed through the same and/or related channels of trade.

32. On information and belief, Pingo Foods has had actual notice of Pinkberry's PINKBERRY Trade Dress and Pinkberry's ownership and use of said trade dress in connection with its products, services and restaurants.

33. The infringing use and copying by Pingo Foods of a virtually identical and/or confusingly similar trade dress to the PINKBERRY Trade Dress is likely to cause and has caused confusion, mistake and/or deception of consumers and the general public, as to the products, services and restaurants offered by Pinkberry and those offered by Pingo Foods. Pingo Foods' copying and use of a trade dress which is identical and/or confusingly similar to that used in connection with Pinkberry's products, services and restaurants is likely to confuse and deceive consumers and the public into believing that Pingo Foods' products, services and restaurant are in some way backed by, sponsored by, licensed by, authorized by, approved by, franchised by, associated with or otherwise connected with Pinkberry. Such conduct is deceiving to the public.

34. Pingo Foods' infringement of the PINKBERRY Trade Dress, including its use of the design, layout and non-functional aspects of the Pinkberry Products, services and restaurants has been willful. On information and belief, Pingo Foods has intentionally adopted, copied and used the PINKBERRY Trade Dress in connection with Pingo Foods' products, services and restaurant in order to trade on the goodwill, reputation and quality associated with the PINKBERRY Trade Dress and to "palm

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

off" Pingo Foods' products and services as Pinkberry's.

35. The above acts by Pingo Foods constitute trade dress infringement. By reason of the foregoing, Pingo Foods has violated and will continue to violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), unless enjoined by the Court.

36. Such conduct, confusion and deception is causing, and unless enjoined by this Court, will continue to cause Pinkberry immediate and irreparable injury and damage in an amount to be proven at trial.

37. Pinkberry has no adequate remedy at law unless Pingo Foods' conduct is enjoined by this Court.

**SECOND CLAIM FOR RELIEF**

**TRADEMARK INFRINGEMENT**

**UNDER 15 U.S.C. § 1114 [LANHAM ACT § 32]**

38. Pinkberry repeats paragraphs 1 through 37, above, and incorporates the allegations thereof as if herein set forth in their entirety.

39. Pinkberry has used its PINKBERRY Marks in connection with, and to identify the source of the Pinkberry Products and to distinguish those products from similar products offered by other companies, by, and without limitation, prominently displaying the PINKBERRY Marks on Pinkberry's storefronts, employees' uniforms, cups, to-go containers and bags, and advertising and promotional materials distributed throughout the United States, including, without limitation, on its website at www.pinkberry.com.

40. Pingo Foods' use of the PINGO YOGURT Mark in connection with the advertising, promotion and sale of directly competitive products and services infringes Pinkberry's registered PINKBERRY Marks and is likely to cause confusion, mistake, or deception of the public as to the identity, source and/or sponsorship of Pingo Foods' products, restaurant and services.

41. Pingo Foods' use of the PINGO YOGURT Mark has been made



REED SMITH LLP
A limited liability partnership formed in the State of Delaware

notwithstanding Pinkberry's well-known and prior-established rights in the PINKBERRY Marks and with both actual and constructive notice of Pinkberry's federal trademark registrations and rights under 15 U.S.C. § 1072.

42. On information and belief, Pingo Foods has intentionally adopted and continued to use the PINGO YOGURT Mark with the intent of causing confusion, mistake, or deception of the public as to the identity and source of Pingo Foods' products, restaurant and services.

43. The above acts by Pingo Foods constitute trademark infringement. By reason of the foregoing, Pingo Foods has violated and will continue to violate § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), unless enjoined by the Court.

44. Pingo Foods' infringing activities have caused, and unless enjoined by this Court, will continue to cause substantial, immediate, and irreparable injury and other damage to Pinkberry's business, reputation and goodwill.

45. Pinkberry has no adequate remedy at law unless Pingo Foods' infringing conduct is enjoined by this Court.

## THIRD CLAIM FOR RELIEF

## UNFAIR COMPETITION

## UNDER 15 U.S.C. § 1125(a) [LANHAM ACT § 43(a)]

46. Pinkberry repeats paragraphs 1 through 45, above, and incorporates the allegations thereof as if herein set forth in their entirety.

47. Pingo Foods' improper use of the PINGO YOGURT Mark in connection with the advertising, promotion and sale of directly competitive products and services constitutes unfair competition under 15 U.S.C. § 1125(a).

48. Pingo Foods' use of the PINGO YOGURT Mark is likely to cause confusion, mistake, or deception among consumers as to whether Pingo Foods is affiliated, connected or associated with Pinkberry, and as to whether Pinkberry is the source of Pingo Foods' products and commercial activities or has sponsored or



REED SMITH LLP
A limited liability partnership formed in the State of Delaware

approved them.

49. Pingo Foods' unfair competition has caused and will continue to cause irreparable injury and other damage to Pinkberry's business, reputation and goodwill in its PINKBERRY Marks for which Pinkberry has no adequate remedy at law.

**FOURTH CLAIM FOR RELIEF**

**FALSE DESIGNATION OF ORIGIN**

**UNDER 15 U.S.C. § 1125(a) [LANHAM ACT § 43(a)]**

50. Pinkberry repeats paragraphs 1 through 49, above, and incorporates the allegations thereof as if herein set forth in their entirety.

51. Pingo Foods' PINGO YOGURT Mark is such a colorable imitation and copy of the PINKBERRY Marks that Pingo Foods' use thereof in connection with directly competitive products and services is likely to cause confusion, mistake, or deception as to whether Pingo Foods is affiliated, connected, or associated with Pinkberry, and as to whether Pinkberry is the source of Pingo Foods' products, services, or commercial activities or has sponsored or approved them.

52. Pingo Foods' use of the PINGO YOGURT Mark is a false designation of the origin of Pingo Foods' products, services or commercial activities and/or a false or misleading representation concerning such products, services or commercial activities under 15 U.S.C. § 1125(a).

53. As a direct and proximate result of the violations identified herein, Pinkberry has been injured in its business and property. Pinkberry has suffered damages in an amount to be proven at trial.

**FIFTH CLAIM FOR RELIEF**

**UNFAIR COMPETITION**

**UNDER CALIFORNIA BUSINESS AND PROFESSIONS CODE**

**§ 17200 *et seq.***



REED SMITH LLP
A limited liability partnership formed in the State of Delaware

54. Pinkberry repeats paragraphs 1 through 53, above, and incorporates the allegations thereof as if herein set forth in their entirety.

55. Pingo Foods' activities as stated herein constitute unfair competition and an infringement of Pinkberry's common law trademark rights in the PINKBERRY Marks in the State of California.

56. Pursuant to California Business and Professions Code § 17203, Pinkberry is entitled to preliminary and permanent injunctive relief ordering Pingo Foods to cease this unfair competition, as well as disgorgement of all of Pingo Foods' profits associated with this unfair competition.

## SIXTH CLAIM FOR RELIEF
## INJURY TO BUSINESS REPUTATION
## CALIFORNIA COMMON LAW

57. Pinkberry repeats paragraphs 1 through 56, above, and incorporates the allegations thereof as if herein set forth in their entirety.

58. Pingo Foods' use of the PINGO YOGURT Mark injures and creates likelihood of injury to Pinkberry's business reputation because persons encountering Pingo Foods' products and services will be misled into believing that Pinkberry is affiliated with or related to Pingo Foods, and any adverse reaction by the public to Pingo Foods, the quality of Pingo Foods' products, or the nature of its business will injure the business reputation of Pinkberry and the goodwill that Pinkberry has enjoyed and enjoys in connection with its PINKBERRY Marks.

## SEVENTH CLAIM FOR RELIEF
## UNJUST ENRICHMENT

59. Pinkberry repeats paragraphs 1 through 58 above, and incorporates the allegations thereof as if herein set forth in their entirety.

60. As a result of its conduct, Pingo Foods has been unjustly enriched at the

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

expense of Pinkberry and the law thereby implies a contract by which Pingo Foods must pay to Pinkberry the amount by which, in equity and good conscience, Pingo Foods has been unjustly enriched at Pinkberry's expense.

**WHEREFORE**, Pinkberry seeks judgment against Pingo Foods as follows:

1. That Pingo Foods and its agents, officers, servants, employees, representatives, licensees, franchisees, successors, assigns, attorneys and all other persons who are acting in concert or participation with any of them, and each of them, be preliminarily and permanently enjoined from any further infringement of the PINKBERRY Trade Dress;

2. That Pingo Foods and its agents, officers, servants, employees, representatives, licensees, franchisees, successors, assigns, attorneys and all other persons who are acting in concert or participation with any of them, and each of them, be preliminarily and permanently enjoined from any further use of the PINGO YOGURT Mark or any other trademark, trade name or other designation that is confusingly similar to the PINKBERRY Marks;

3. That Pingo Foods and its agents, officers, servants, employees, representatives, licensees, franchisees, successors, assigns, attorneys and all other persons who are acting in concert or participation with any of them, and each of them, be preliminarily and permanently enjoined from any further acts of unfair competition against Pinkberry;

4. That Pingo Foods be required to file with the Court and serve on Pinkberry within thirty (30) days after entry of the injunction, a declaration under oath setting forth in detail the manner and form in which Pingo Foods has complied with the injunctions;

5. That, pursuant to 15 U.S.C. § 1117, Pingo Foods be held liable for all damages suffered by Pinkberry resulting from the acts alleged herein;

6. That Pinkberry receive an award in the amount by which Pingo Foods



REED SMITH LLP
A limited liability partnership formed in the State of Delaware

has been unjustly enriched;

7. That, pursuant to 15 U.S.C. § 1117, Pingo Foods be compelled to account to Pinkberry for any and all profits derived by Pingo Foods from its illegal acts complained of herein;

8. That, pursuant to California Business and Professions Code § 17203, Pingo Foods be compelled to pay restitution and disgorge its ill-gotten gains.

9. That Pingo Foods be ordered pursuant to 15 U.S.C. § 1118 to deliver up for destruction all labels, signs, prints, packages, wrappers, receptacles, advertisement, menus, banners, or the like in possession or custody, or under the control of Pingo Foods bearing the PINGO YOGURT Mark; and

10. That the Court declare this action to be an exceptional case and award Pinkberry its full costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

11. That the Court grant Pinkberry any other remedy to which it may be entitled as provided for in 15 U.S.C. §§ 1116 and 1117 and/or under state law; and

12. For such other and further relief that the Court deems just and proper.

DATED: September 9, 2008

REED SMITH LLP

By ______________________
Henry C. Wang

*Attorneys for Plaintiff*
PINKBERRY, INC.

DOCSLA-15650044



REED SMITH LLP
A limited liability partnership formed in the State of Delaware