Henry C. Wang (SBN 196537)
Email: hwang@reedsmith.com
William R. Overend (SBN 180209)
Email: woverend@reedsmith.com
Michael A. Garabed (SBN 223511)
Email: mgarabed@reedsmith.com
Karen Wan (SBN 248542)
Email: kwan@reedsmith.com
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA  90071-1514
Telephone:  +1 213 457 8000
Facsimile:   +1 213 457 8080

*Attorneys for Plaintiff*
PINKBERRY, INC.

JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PINKBERRY, INC., a California corporation,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>PINGO FOODS CORPORATION, d/b/a. PINGO YOGURT, a California corporation,<br><br>　　　　　　Defendant. | Case No.  CV 08-05926 R (RZx)<br><br>The Honorable Judge Manuel L. Real<br><br>**[PROPOSED] CONSENT JUDGMENT AND PERMANENT INJUNCTION** |

Pursuant to the parties' stipulation, and good cause appearing, IT IS HEREBY ORDERED that final judgment be and hereby is entered as follows:

1. Pinkberry owns all rights in and to the United States Trademark Registration for the following marks (collectively, "PINKBERRY Marks"), each of which is valid and subsisting:

| TRADEMARK | REG. NO. | ISSUE DATE | GOODS AND SERVICES |
| --- | --- | --- | --- |
| PINKBERRY | 3,302,143 | October 2, 2007 | Frozen yogurt; frozen yogurt based dessert, combined with fruit, nuts, cereal and shaved ice and rice cakes; and smoothies |
| PINKBERRY | 3,460,697 | July 8, 2008 | Restaurant services; restaurants; take-out restaurant services, café-restaurants; fast-food restaurants |
| Stylized Leaf and Berry Swirl Design | 3,461,027 | July 8, 2008 | Express restaurant services, food kiosk services, and carry-out restaurant services featuring frozen yogurt-based desserts, frozen dairy desserts, smoothies and shaved ice |
| PINKBERRY & Stylized Leaf and Berry Swirl Design | 3,460,702 | July 8, 2008 | Restaurant services; restaurants; take-out restaurant services; café-restaurants; fast-food restaurants |

2. The PINKBERRY Marks are coined, arbitrary and famous marks that are entitled to broad protection.

3. In addition, Pinkberry restaurants have been characterized by a unique and inherently distinctive trade dress which has been used to identify them and to identify Pinkberry as their source. The Pinkberry storefront signage is green with pink accents, with metal blue and green awnings on the storefront. The restaurants' interior presents a contemporary and refreshing café-style environment that is painted in pastel colors, such as peach, green and blue, with green circles on the glass and counter. The

1  minimalist décor showcases unique and distinctive non-functional design elements
2  that include, among other things, glass walls, pebble stone flooring and modern
3  designer furniture, such as white tables, modern colored plastic chairs, slatted natural
4  wooden benches and modern hanging lamps (e.g., Le Klint pendant lights).  The
5  counter layout includes a minimalist food preparation area that is behind open, glass-
6  plated countertops with uniform trays of toppings.  These unique design features and
7  characteristics, taken as a whole, create an inherently distinctive and non-functional
8  trade dress (the "PINKBERRY Trade Dress")

9       4.     Pingo has used the Pingo mark and logo depicted in **Exhibit A** attached
10 hereto (the "PINGO Marks") and operated café-style restaurants in which it sells the
11 same or similar products as Pinkberry and operated café-style restaurants in which it
12 sells the same or similar products as Pinkberry under a colorable imitation of the
13 distinctive PINKBERRY Trade Dress.

14      4.     On or about September 10, 2008, Pinkberry commenced an action for
15 damages and equitable relief in the United States District Court for the Central District
16 of California against Defendant, entitled <u>Pinkberry, Inc. v. Pingo Foods, Corp. d/b/a</u>
17 <u>Pingo Yogurt</u>, CV 08-05926 R (RZx), asserting claims for federal trademark dilution,
18 federal trademark infringement, federal false designation of origin, California unfair
19 competition, injury to business reputation, and unjust enrichment (the "Action").

20      5.     Defendant has admitted that its trade dress is a colorable imitation of the
21 distinctive PINKBERRY Trade Dress.  Among other things, Pingo's non-functional
22 design elements of the PINKBERRY Trade Dress includes pastel colors of peach,
23 green and blue, green circles on glass walls and front door, glass walls, pebble floors,
24 modern designer furniture (including white tables, modern colored plastic chairs, and
25 modern hanging lamps) and a food preparation area that is behind open, glass-plated
26 countertops with uniform trays of toppings (collectively, the "PINGO Trade Dress").
27 *See* true and correct copies of photographs of the PINGO Trade Dress, attached hereto
28 as **Exhibit B**.

6. Defendant has represented to Pinkberry that it will, among other things: (1) remove/replace the color of the orange wall and orange glass wall, the colored plastic chairs, all green and blue circles from its current stores by midnight on November 30, 2008; and (2) cease and desist from using elements of the PINGO Trade Dress, the PINKBERRY Marks and the PINKBERRY Trade Dress in and on all of its future store designs, signage, decoration, layout, uniforms, cups, menus, napkins, banners, advertisements, Internet websites, coupons and any other promotional materials. To that end, the parties have entered into a Settlement Agreement containing the full terms and conditions of their settlement.

7. Pursuant to the Settlement Agreement containing the full terms and conditions of their settlement, Defendant has consented to a Permanent Injunction and Consent Judgment as follows:

### A.   **Permanent Injunction**

Defendant, its subsidiaries, affiliates, agents, servants, employees, attorneys, representatives, successors and assigns, and all persons, firms or corporations in active concert or participation with Defendant, shall be permanently restrained and enjoined from:

(1) Using any trade name or mark that includes the word "BERRY" in connection with the sale, distribution or promotion of any goods or services, including on or with Defendant's signage, uniforms, cups, napkins, decor, menus, banners, advertisements, Internet websites, coupons and any other promotional materials, except that Defendant may make limited use of the word "berry" in a non-trademark or descriptive fashion to describe berry flavors, ingredients or toppings for its products;

(2) Using any mark or logo that consists of a "swirl" or "swirl-like" design in connection with the sale, distribution or promotion of any goods or services, including on or with Defendant's signage, uniforms, cups, napkins, decor, menus, banners, advertisements, Internet websites, coupons and any other promotional materials;

(3) Using elements of the PINKBERRY Trade Dress that is likely to confuse, mislead or deceive consumers or members of the public that Defendant's actions, sales, services, and/or products are sponsored by, approved by, licensed by, or connected or otherwise affiliated with Pinkberry or its subsidiaries;

(5) Engaging in any conduct that tends falsely to represent, or is likely to confuse, mislead or deceive consumers or members of the public that Defendant's actions, sales, services, and/or products are sponsored by, approved by, licensed by, or connected or otherwise affiliated with Pinkberry or its subsidiaries; and

(6) Diluting, blurring or tarnishing the distinctive and famous nature of Pinkberry's name and the PINKBERRY Marks.

### B. Compliance with Injunction Order

Defendant shall provide proof of compliance with the permanent injunction order in the form of photographs and a compliance statement. Such proof shall be delivered to Pinkberry's counsel of record every six months for a period of eighteen (18) months from the date of entry of this Judgment.

### C. Destruction of Infringing Materials

Within thirty (30) days of entry of judgment for Pinkberry, Defendant, its subsidiaries, affiliates, agents, servants, employees, attorneys, representatives, successors and assigns, and all persons, firms or corporations in active concert or participation with Defendant, shall deliver up for destruction to Pinkberry:

(1) Any and all goods, apparel, merchandise, products, labels, signs, packaging wrappers, containers, advertising or promotional materials, letterhead, business cards, and any other writing materials used in its business, which display, reproduce, consists, or bear the PINGO Trade Dress;

(2) Any screens, designs, blueprints, drafts, patterns, plates or negatives used specifically in connection with the PINGO Trade Dress, emblems, symbols, names, designations, terminology; and

(3) Any and all goods, apparel, merchandise, products, labels, signs,

packaging wrappers, containers, advertising or promotional materials, letterhead, business cards, and any other writing materials used in its business, which falsely display, reproduce, copy, counterfeit, imitate or bear the PINKBERRY Marks and Trade Dress, photographs, artworks, or any simulation or variant thereof.

### D.    Violation of Injunction

Violation of this Consent Judgment and Permanent Injunction shall subject Defendant to contempt and any remedy available at law or equity, including, but not limited to, injunctive relief, monetary damages and the award of reasonable attorneys' fees and costs in enforcing this injunction.

### E.    Jurisdiction

This Court shall retain jurisdiction over any enforcement action of this injunction.

### F.    Judgment

Judgment on all claims and causes of action shall be, and is hereby, entered in favor of Plaintiff Pinkberry, Inc. accordingly.  Except as provided for in the Settlement Agreement, each side is to bear its own attorneys' fees, costs and expenses.

**IT IS SO ORDERED.**

DATED:  Oct. 31, 2008

_____
MANUEL L. REAL
United States District Court Judge

– 6 –
CONSENT JUDGMENT AND PERMANENT INJUNCTION